# Rockwell *versus* Langley.

1. In an issue founded on a declaration or plea founded on a former judgment, the only proper subject to be submitted to the jury is, whether or not the matter in dispute, in the pending action, is the same that was litigated in the former one. With this fact found, the Court must decide upon the effect of the former judgment.

2. An action was brought for wrongfully flooding, by means of a dam, the land of the plaintiff towards *the west and south.* The defendant pleaded, Not guilty, and a general verdict was rendered for the plaintiff. A second action was brought for the injury done between the institution of the two suits. On the second trial, the defendant offered to prove that he had *a parol license* from the plaintiff to flow back the water over the *west line* of the plaintiff; and that, under a written agreement executed by the plaintiff, he had a right to construct *a ditch,* intended to prevent injury to the plaintiff's land *lying to the south;* that the ditch was not completed at the time of the first trial, but that it was completed when the second suit was brought; this being offered to show that the verdict in the first action was rendered on account of the injury done to the plaintiff's land lying *to the south,* and because the ditch was not then completed:

*It was held* that the evidence was not admissible.

ERROR to the Common Pleas of *Erie county.*

This was an action on the case brought to August Term, 1850, by Rockwell *v.* Langley, for the continuance of a nuisance, in the keeping up of a mill-dam, and thereby keeping plaintiff's land overflowed, after a prior suit to May Term, 1847, for the same nuisance, and a recovery thereon by plaintiff. Plaintiff declared for the continuance of the nuisance aforesaid, stating the former proceedings and recovery. Defendant entered a general plea of Not guilty. The issue was tried April 29, 1852. Verdict was rendered for the defendant.

[Rockwell *v.* Langley.]

It appeared on the trial of the former suit, No. 101, May Term, 1847, and for the same nuisance, that in June, 1838, plaintiff sold, by articles of agreement, to Hiram Hull, about five acres of land, part of the plaintiff's farm. A small stream passed from the residue of plaintiff's farm, easterly through the five acres, which were bounded on the south and west by said farm. Hull erected a dam on the five acres, diagonally across the stream, and extending westerly to his west line. This dam was for the purpose of driving a saw-mill. It flowed the water back westwardly and southwardly beyond the line of the five acres, upon plaintiff's land, and in high water caused it to flow over plaintiff's land, and eastwardly into the stream again below the dam. To prevent this overflow, a dam or an embankment was extended by Hull from the west end of the dam, westwardly several rods on plaintiff's land; whether with plaintiff's consent or not, it was alleged, was a disputed question in the first suit. This had the effect to flow the water further west on plaintiff's land, and when the dam was full it flowed round the end of the embankment, southwardly and eastwardly, over plaintiff's land. On the first day of April, 1845, Hull sold his article of agreement and right in the land to the defendant, Langley, who continued to keep up the dam and flow the water on the land of the plaintiff as before.

The plea in that suit was, Not guilty. Such first suit came on for trial on the 22d of April, 1850. The plaintiff gave evidence of the overflowing, as aforesaid, of about half an acre of his land, and injuring, by occasional overflow and saturation, two or three acres more. The defendant claimed a right to do so by virtue of an alleged *parol license* from plaintiff to Hull, and also by a written agreement between the plaintiff and Hull, dated March 15, 1845; and gave evidence respecting such license, and also to show that plaintiff had not been injured. The plaintiff, in reply, gave evidence to disprove the alleged parol license, and to show that the written agreement (in which he alleged the parol agreement, if there ever had been any, was merged), had been disowned and repudiated by defendant, and not complied with. The jury found a general verdict for the plaintiff, assessing the damages at fifty cents, and judgment was thereon entered. It was alleged that the first suit was brought to settle the disputed question of right, and not to recover damages to any greater amount than was necessary to accomplish that object; and that the jury were so told by the plaintiff's counsel. The period for which damage was claimed in that suit was from the 13th day of February to the 9th of April, 1847.

On the 23d July, 1850, the plaintiff brought the present suit, No. 96, of August Term, 1850, against the defendant, for the *continuance* of the same nuisance and overflowing by means of the same dam, viz., for damage sustained from the institution of the former suit in 1847, till the institution of this suit.

[Rockwell v. Langley.]

The plea was, Not guilty. On the trial of the issue, the plaintiff gave in evidence the record of the former suit, and produced testimony to prove that defendant, from April 9, 1847, till the day of trial, had continued to keep up his dam as high as it was at and before the 'commencement of the former suit, and overflowed plaintiff's land to the same extent; and that in 1849, he added to the height of the dam, and extended the west end of it or embankment thereof, further upon plaintiff's land, thereby increasing the height and extent of the overflow. Plaintiff also proved the amount of damage, and rested.

Defendant then offered to prove, by Hiram Hull, that he purchased the premises of plaintiff with a view to build a saw-mill; that plaintiff gave him, by parol, a right to build or extend his dam up as far as he did extend it. And when plaintiff complained of its injuring his land south of the dam, a written agreement of the 15th of March, 1845, was entered into as a settlement of complaints on the subject. That the witness sold the premises to the defendant, who has complied with the agreement, except so far as waived by the plaintiff.

To this evidence plaintiff's counsel objected, because it had all been given in evidence and relied upon as matter of defence by defendant in the former suit by plaintiff against him for the same nuisance, and for the continuance of which this suit was brought; and that it was so given in evidence the plaintiff offered to prove. The Court declined receiving the proof, admitted the evidence, and exception was taken on part of plaintiff. The admission of this testimony was the first error assigned.

On the part of the plaintiff, points were submitted, the *first* of which was as follows:

1. This being an action for the continuation of a nuisance, after a prior suit for the same nuisance, instituted April 9, 1847, the verdict and judgment in that suit is conclusive evidence against defendant, and if his dam continued after said suit at the same height, and flooded half an acre of plaintiff's land west of defendant's west line, substantially in the same manner as before, plaintiff is entitled to recover, and defendant cannot protect himself under the alleged parol agreement or the written agreement between plaintiff and Hull, because given in evidence and the benefits thereof claimed in the prior suit, and because there is no evidence that either was assignable or ever assigned to defendant.

KNOX, J., charged as follows:

"On the 9th of April, 1847, the plaintiff brought his action on the case against the defendant for flooding his lands, which was tried on the 23d of April, 1850, and a verdict rendered for plaintiff for fifty cents, upon which judgment was rendered.

"On the 23d of July, 1850, this suit was commenced, for a

[Rockwell *v.* Langley.]

continuation of the nuisance, and the plaintiff proved by several witnesses that the dam remained the same from April, 1847, to July, 1850, except the extension in 1849, and the construction or repairing of a ditch in April, 1850.

"This suit is for the damages alleged to have been sustained from April 9, 1847, until 23d July, 1850, without any claim for additional damages occasioned by alterations in the mean time.

"There are two points where the plaintiff claims his land to be injured:

"1. By the overflowing of about half an acre lying west of the line running north and south between the parties.

"2. By water running round the end of the dam and overflowing plaintiff's land on the south.

"Several witnesses have been examined on the part of the plaintiff, who estimate the damage from three to five dollars per year.

"The defendant alleges, 1. That he had the right to overflow the half acre by virtue of a parol license obtained by Hiram Hull (a former owner) from Rockwell in the spring of 1839.

"2. That the right to throw the water round the dam on the south end is regulated by an agreement entered into between Hull and Rockwell in March, 1845, which he (the defendant) contends protects him from a recovery in this suit.

"The position of the plaintiff is, that these several matters cannot now avail the defendant, as they were passed upon in the former suit, and cannot be again inquired into.

"The plaintiff's points are answered as follows:

"1. The verdict and judgment in the former suit, tried in April, 1850, is conclusive that the plaintiff had sustained injury by the flooding of his land by reason of defendant's mill-dam at some period between April, 1845, the time of defendant's purchase, and April, 1847, when the action was commenced, but whether the verdict was rendered for the injury to the land *west of the line* between the parties, *or south of the dam*, is doubtful, and must be determined by the jury.

"If the recovery embraced the injury on the west, the defendant is estopped from setting up the parol license testified to by Hull, but if the former recovery was based solely upon the injury occasioned by the water running round the dam, the defendant would not be estopped from denying the plaintiff's right to recover damages in this suit for injury to the land on the west, but it would be conclusive as to the right to recover for damages at the other point, provided the same condition of things remained from April, 1847, to July, 1850, or any portion of this time, as were in existence from April, 1845, to April, 1847. Whatever was determined in favor of the plaintiff in the former suit must be so determined in this; but it does not necessarily follow that the

[Rockwell *v.* Langley.]

recovery embraced both points where he complained of being dam-
nified. The verdict was for fifty cents. We know of no other way
of determining what it was for than by referring it as a question
of fact to the jury.   *   *   *   *   It must be remembered that
the defence in the former suit, as in the present, was separate as
to the right to flood the land on the west and on the south—the
first by parol license, and the second by the agreement of March,
1845. Now it is easy to perceive that the jury could find in
favor of the defendant as to the parol license, and yet find that
he had not in all things complied with the agreement of March,
1845, so as to have it operate as a bar to the recovery for injury
sustained to the land on the south of the dam. If this be so there
would be neither justice nor law in refusing to the defendant the
right to avail himself of a defence which may have already been
found effective in his favor.

"1. Was there a parol license as testified to by Hull? This is
denied by the plaintiff. 2. If there was, is it merged in the writ-
ten agreement of March, 1845?

"The defendant contends that the written agreement refers only
to the water which run round the dam, as this was the only matter
in dispute. As there is parol evidence upon the question, it is all
matter of fact for the jury to determine.

"If the agreement of March, 1845, referred only to the point
south of the dam, the parol license would not be merged, but would
still protect the defendant as to the land to which it refers, if its
existence is established, and the jury are satisfied that it was not
decided adversely to the defendant in the former suit.

"The jury will determine, 1st, What was the basis of the former
recovery? If the flooding the land on the west and south, and the
same state of things continued from the commencement of the
former to the institution of the present suit, the plaintiff is entitled
to recover for the injury sustained at both points.

"If, however, the recovery was confined to the injury on the
south, and the jury find the existence of the parol license, and that
it was not merged in the article of agreement, this branch of the
plaintiff's case is out of the way, and we come to the other point.

"And the next inquiry is: Whether or not the agreement of
March, 1845, is in force. If not, then is there any injury to
plaintiff's land, or was there between April, 1847, and July, 1850,
by reason of the water running round the dam and upon his land?
If so, he is entitled to recover; but if the agreement is in force
between these parties and has been complied with so that no injury
was sustained between these periods of time, the defendant would
be protected by it and be entitled to a verdict."

Verdict was rendered for the defendant.

It was assigned for error: 1. The Court below erred in admit-
ting the evidence objected to in plaintiff's bill of exceptions.

[Rockwell v. Langley.]

2. In not answering plaintiff's first point in the affirmative.

3. In charging in substance that plaintiff claimed for injury to his land at two distinct and separate points.

4. In submitting to the determination of the jury as a question of fact in the case, whether the verdict in the former suit, on which this suit is predicated, was rendered for the injury to the land west of the line between the parties or south of the dam—a question on which there was no evidence but the record.

*E. Babbitt*, for plaintiff in error.—As to the conclusiveness of a former verdict as to all questions at issue on the first trial, he referred to 17 *Ser. & R.* 319, Killheffer *v.* Herr; 9 *Barr* 345, Smith *v.* Elliott.

*Marshall* and *Thompson*, for defendants.—In the case No. 101, May Term, 1847, the plaintiff introduced evidence to show that the dam complained of "flowed the water back westwardly and southwardly, beyond the line of the five acres, and upon the plaintiff's land, &c." In answer to this evidence, defendant introduced testimony to show that, although his dam did flow back the water over the *west line* of the said five acres, yet he had a parol license to do so, derived through Hull, his vendor; and as to the injury complained of from flooding the lands of plaintiff *lying southwardly* of the dam, he set up the agreement of the 15th of March, 1845, and that under it he had a right to construct a ditch, and had constructed *a ditch* intended to prevent injury to the lands of the plaintiff in that direction. On this point there was a contrariety of evidence.

The defendant also insisted, that if the ditch was not completed according to contract, the plaintiff had put him off his guard by having declared he was in no hurry about it. This case was tried on the 23d of April, 1850, and resulted in a verdict of 50 cents damages.

The present action was No. 96, May Term, 1850, and the damages claimed in it were such as arose between the bringing of the suit in No. 101 of May Term, 1847, and the commencement of the present action, on the 23d of June, 1850. The defendant in this suit, on the trial thereof, gave evidence that he had completed the ditch, fully and entirely, as required by the agreement of the 15th of March, 1845, before this suit was brought, and claimed that he was therefore not liable for any damage to the plaintiff's land lying southwardly of the dam. And inasmuch as there was a general verdict against him in No. 101, he claimed to have the right to give in evidence again, the parol license to flow the water over the plaintiff's land westwardly, in order to satisfy the jury that it was not on that point that the former jury had found their verdict against him. If the jury gave their former verdict on

[Rockwell *v.* Langley.]

account of the injury arising *from a failure to make the ditch* as required by the. agreement of the 15th March, 1845, and if the defendant had complied with the agreement in said article, and no new injury arose therefrom, nothing of a conclusive character should be allowed to attach to such a verdict. The agreement after that suit remained binding and subject to be complied with; and as the plaintiff gave evidence in the present case of overflowing at both points, the defendant had a right to give evidence of his parol license, in order to prove that it was not for flowing the water over *the west line* that he was held accountable before, and should not be held answerable now. And also to show that he had, before the bringing of this suit, complied with the contract in regard to the ditch. If this were not so, the defendant might have been made answerable in this suit, although his parol license in the first trial, and in the second one, was a perfect defence for flowing back water *in that direction;* and though he had entirely complied with the contract of the 15th March, 1845, and prevented all injury to plaintiff on the other side.

The opinion of the Court was delivered by

LOWRIE, J.—There is no rule of legal practice of higher value than that which arrests the strife of litigation, by declaring that one suit and judgment therein is an end of controversy as to all matters put in issue, and which ought to have been put in issue. And the present case illustrates the wisdom and necessity of the rule, as well for the protection of the public against the expense and trouble of repeated litigation, as to save the parties from the ruinous consequences of indulging the thought of being avenged for one defeat by a renewal of the contest. The annual damage in this case is about four dollars, and for this the parties have had one concluded action, and a trial in another, and if there is not some virtue in the rule just alluded to, it is very probable that the exhaustion of one of them will alone be effectual to terminate the strife. The rule is both just and beneficent, even though it sometimes happens that the former judgment was erroneous. Its errors must be joined to those other innumerable ones that necessarily arise from human fallibility.

The former action was, substantially, for a wrongful flooding of the plaintiff's land, by means of a dam erected and continued on the land of the defendant. The plea was, Not guilty, and on a general verdict for the plaintiff, judgment was entered in his favor.

This action recites, and is founded upon the former judgment, and avers a continuance of the nuisance; and to this the plea is, not guilty, the only meaning of which here is, that the defendant has not continued the nuisance charged and found in the former action.

[Rockwell v. Langley.]

The essence of the charge in that action is, that the defendant had no right to maintain his dam so as to flood the plaintiff's land or any part of it, and this charge appears to be sustained by the judgment. But now the defendant alleges that there was then a flooding at the south and also at the west, and that, though the right at both points was in controversy, and was submitted to the jury, yet the verdict applies to only one of them; and the jury, in the present case, were directed to inquire whether this was so.

If such an inquiry is proper then, it is not easy to see how one judgment can ever be conclusive in an action of nuisance, or in any other action. As well might it be said of a suit on several promissory notes of $100 each, with a recovery of only $100, that the verdict applies to only one of them, and allow the plaintiff to sue again on the others. But we need no better illustration of the difficulty than this case affords. It is assumed to be doubtful whether the former verdict finds a nuisance on the west, or on the south, or on both; and it is left to this jury to decide how this is. They decide in favor of the defendant, which means, that the former verdict did not apply to both sides, and that the defendant has still a right to flood one or other of them; but which of them no one can tell. We have now, therefore, two judgments, both inconclusive, and therefore the strife may still go on. This cannot be. The judgment must, if possible, be conclusive of something. What that something is must be defined, not by guessing at the intention of the jury, but by the matters in dispute and the verdict which decides them.

The pleadings show that the matter in dispute was the wrongful flooding of the plaintiff's land, and that is decided in his favor. The evidence must show what land, and it does show, that on the trial the defendant asserted a right to flood a part of the land, and submitted the evidence of his right to the jury; and of course they decided it. How? There is no verdict in his favor, but a general one against him. The inference is inevitable, that his claim was found against him; for he might have asked, by plea or otherwise, that they should find this fact specially, and he ought to have done so, and then also it would have been conclusive for or against him. It was found one way or the other, and the conclusive presumption is that the verdict shows which way.

In an issue on a declaration or plea founded on a former judgment, the only proper subject to be submitted to the jury is, whether or not the matter in dispute in the present action is the same that was litigated in the former one. With this fact found, the Court must decide upon the effect of the former judgment.

These principles are all that are material in the present case, and they require a reversal of this judgment.

Judgment reversed and a new trial awarded.